UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEW MEXICO

In re:

CHARLES A. FIORENZA and
GENA R. FIORENZA,                              Case No. 08-11670-t7

    Debtors.

SANDIA AREA FEDERAL CREDIT UNION,

    Plaintiff,

v.                                              Adv. Pro. No. 09-1012-t

CHARLES A. FIORENZA and
GENA R. FIORENZA,

    Defendants.

## **OPINION**

Before the Court are Plaintiff's motion to revive a money judgment entered in this proceeding in 2009 and Defendants' motion for prospective relief from the judgment. Having reviewed the parties' briefs and heard arguments of counsel, the Court finds and concludes that the Plaintiff's judgment should be revived and the Defendants' request for relief should be denied.

### I.    FACTS[1]

On January 12, 2007, Defendants applied to Plaintiff for a $75,000 loan. Defendants gave Plaintiff pay advices showing that Mr. Fiorenza earned $195,500 in 2006 as a "Managing Partner"

---

[1] These findings are taken from the dockets in Defendants' bankruptcy case and this adversary proceeding. *See St. Louis Baptist Temple, Inc. v. Fed. Deposit Ins. Corp.*, 605 F.2d 1169, 1172 (10th Cir. 1979) (holding that a court may *sua sponte* take judicial notice of its docket); *LeBlanc v. Salem (In re Mailman Steam Carpet Cleaning Corp.)*, 196 F.3d 1, 8 (1st Cir. 1999) (same). The court also took judicial notice of a relevant state court docket for the limited purpose of determining when a foreclosure sale was held.

of Pitre Super Center. Mr. Fiorenza also represented that his monthly salary in January 2007 was $8,750.

Based on the Defendants' representations, on or about February 6, 2007, Plaintiff loaned Defendants $75,000, secured by a second mortgage on a house in Corrales, New Mexico (the "Corrales House"). The first mortgage was held by LaSalle Bank, N.A. Residential Funding Company, LLC ("LaSalle").

On February 26, 2008, LaSalle filed an action to foreclose its mortgage on the Corrales House (the "Foreclosure Action"). At that time, Debtors owed LaSalle about $1,100,000. Plaintiff and Defendants were parties to the Foreclosure Action. On April 4, 2008, Plaintiff filed a cross-petition for debt and foreclosure.

On May 27, 2008, Defendants filed this bankruptcy case. In their statement of financial affairs, Defendants disclosed their 2006 income as $34,984, not $195,500. Similarly, Defendants' 2006 federal income tax return reported wages of $34,984.

LaSalle filed a stay relief motion on June 5, 2008. Defendants did not object to the motion, and on July 3, 2008, the Court entered a default order granting LaSalle and "any and all junior lienholders" stay relief (the "Stay Relief Order"). Plaintiff did not file a separate stay relief motion, object to LaSalle's motion, or agree to the Stay Relief Order. The Stay Relief Order provided in part:

> any deficiency owed by the Debtor(s) to [LaSalle], its successors, assigns and/or real party in interest, after foreclosure sale shall be set forth in a Proof of Claim filed by [LaSalle], its successors, assigns and/or real party in interest, and shall be subject to the Bankruptcy Code should this bankruptcy continue.

Also, on July 3, 2008, the chapter 7 case trustee filed a report of no distribution. Because of that, no proof of claim bar date was ever set.

After the Stay Relief Order was entered, the Foreclosure Action proceeded to judgment. On July 31, 2008, the state court entered a $76,165.38 *in rem* judgment in favor of Plaintiff and against Defendants on Plaintiff's cross-petition for foreclosure (the "In Rem Judgment"). LaSalle also obtained a judgment foreclosing its first mortgage.

The Corrales House was sold at a special master's sale. On October 3, 2008, the state court entered an order approving the sale. The sale extinguished the In Rem Judgment. All the sale proceeds were paid to LaSalle; Plaintiff received nothing.

On February 2, 2009, Plaintiff filed this adversary proceeding. In its prayer for relief Plaintiff asked:

> For entry of Judgment against Defendants for all damages claimed herein pursuant to 11 USC Section 523, as may be determined by the Court, and that such obligations, including interest, fees and costs of collection, if any, be determined to be nondischargeable and for such other relief as the Court deems just in the premises.

The Court entered a default judgment against Defendants on March 16, 2009. Defendants moved to set the judgment aside, which the Court did on May 27, 2009.

On June 2, 2009, Plaintiff again moved for a default judgment. On July 8, 2009, the Court entered a second default judgment against Defendants (the "Judgment"). The Judgment provides in part:

> ORDERED, ADJUDGED AND DECREED that the debt owed by Defendants Charles Fiorenza and Gena R. Fiorenza to Sandia Area Federal Credit union in the amount of $76,165.38 bearing interest at the rate of 8.50% per annum from February 29, 2008 until paid plus costs of $108.25 and attorneys fees of $1000.00 be and the same is excepted from said Defendants' bankruptcy discharge; *FURTHER ORDERED that the Plaintiff be and the same hereby is granted default judgment against Defendants in the sum of $76,165.38 bearing interest at the rate of 8.50% per annum from February 29, 2008 until paid plus costs of $108.25 and attorneys fees of $1000.00 plus interest at the legal rate.*

(italics added).

On July 21, 2009, and again on August 24, 2010, Defendants moved to set aside the Judgment. The Court denied the motions. On September 14, 2010, Defendants filed a motion to dismiss the adversary proceeding. The Court denied the motion.

While Defendants were attempting to set aside the Judgment, Plaintiff sought to garnish Mr. Fiorenza's wages from America's Mattress. On April 27, 2011, a garnishment judgment was entered. Defendants immediately filed a motion for relief from the garnishment judgment due to poverty. The Court denied the motion on May 18, 2011.[2]

On July 24, 2015, Plaintiff filed a second application for writ of garnishment, again seeking to garnish Mr. Fiorenza's wages from America's Mattress. On August 12, 2015, America's Mattress purported to answer the application, stating it did not employ Mr. Fiorenza. The answer was signed by Mr. Fiorenza.

Plaintiff challenged the answer. On or about November 19, 2015, Plaintiff, America's Mattress, and Mr. Fiorenza signed, and the Court entered, a Stipulated Judgment on Writ of Garnishment, Claim of Exemption and Order to Pay (the "Stipulated Garnishment Judgment"), which provides in part:

> 1. The Plaintiff/Judgment Creditor, Sandia Area Federal Credit Union, has a judgment dated March 16, 2009, against the Defendant/Judgment Debtor, Charles A. Fiorenza.
> 2. The total amount of the judgment including the principal, interest, costs, and attorney fees awarded by the judgment was $77,273.63.
> 3. Payments having been received by the Plaintiff/Judgment Creditor after entry of the Judgment, pursuant to prior Writs of Garnishment and/or directly from the Defendant/Judgment Debtor, were first applied to attorney's fees and costs awarded herein and to the interest accrued thereon; and then to damages awarded herein and to the interest accrued thereon. There remains due and owing the Plaintiff damages in the principal amount of $76,165.38, as of July 20, 2015, with interest continuing to accrue at the judgment rate.

---

[2] Altogether, Defendants filed three motions attacking the Judgment, in addition to the first (successful) motion to set aside the original default judgment and the motion for relief from the first garnishment judgment. The Motion for Relief is Defendants' fourth direct or indirect attack on the Judgment.

    4. Interest has accrued through the date of the Application at the rate of 8.50% per annum on damages ($76,165.38) in the amount of $47,630.78.

    5. The unpaid balance of the judgment including accrued interest through the date of the application totals $123,796.16, with interest continuing to accrue until the judgment is paid in full.

Under the Stipulated Garnishment Judgment, the parties agreed that $200 a month would be garnished from Mr. Fiorenza's wages and paid to Plaintiff.

On June 29, 2018, Plaintiff filed a motion to revive the judgment (the "Revival Motion"). Defendants objected and on August 30, 2018, filed a motion for relief from the prospective application of the Judgment (the "Motion for Relief"). The Court held a final hearing on both motions on October 24, 2018.

## II.    DISCUSSION

A.    <u>The Revival Motion</u>.

    1.    <u>Reviving Federal Court Money Judgments</u>. The Bankruptcy Code[3] incorporates Federal Rule of Civil Procedure[4] 69 via Federal Rule of Bankruptcy Procedure[5] 7096. Rule 69(a) provides:

> (a) In General.
>
>     (1) *Money Judgment; Applicable Procedure.* A money judgment is enforced by a writ of execution, unless the court directs otherwise. The procedure on execution--and in proceedings supplementary to and in aid of judgment or execution--must accord with the procedure of the state where the court is located, but a federal statute governs to the extent it applies.
>
>     (2) *Obtaining Discovery.* In aid of the judgment or execution, the judgment creditor or a successor in interest whose interest appears of record may obtain discovery from any person--including the judgment debtor--as provided in these rules or by the procedure of the state where the court is located.

One court has opined:

---

[3] 11 U.S.C. § 101 et seq.
[4] Herein, a "Rule."
[5] Herein, a "Bankruptcy Rule."

The draftsmen of the rule, rather than design a format for supplementary proceedings—with stages, deadlines, and other forms, powers, and limitations specially adapted to the needs of such proceedings—decided (perhaps in the hope that such proceedings would rarely be necessary) to borrow the format employed in the courts of the forum state.

*Resolution Trust Corp. v. Ruggiero*, 994 F.2d 1221, 1226 (7th Cir. 1993).

Rule 69 is broad enough to encompass the state court rules on reviving judgments. In *Securities Investor Protection Corp. v. Institutional Securities of Colorado*, 37 Fed. App'x 423 (10th Cir. 2002), for example, the Tenth Circuit stated:

Authority to revive a federal court judgment is provided by Fed.R.Civ.P. 69(a)(2) and 81(b). Rule 81(b) states that relief formerly obtained through a writ of scire facias may be obtained by appropriate action or motion under the practice prescribed in the Rules of Civil Procedure. The relief formerly obtained through scire facias included the revival of judgments. Rule 69(a) provides for "proceedings on and in aid of execution ... in accordance with the practice and procedure of the state in which the district court is held." The revival of the December 13, 1978 judgment is therefore governed by Colorado state practice and procedure concerning the revival of judgments.

37 Fed. App'x at 425 (citations omitted).[6] Thus, in actions to revive judgments entered by this Court, New Mexico's judgment revival rules apply.

2. <u>State Law</u>. Two New Mexico statutes govern revival of money judgments.[7] First, N.M.S.A § 37-1-2 provides:

Actions founded upon any judgment of any court of the state may be brought within fourteen years from the date of the judgment, and not afterward. Actions founded upon any judgment of any court of record of any other state or territory of the United States, or of the federal courts, may be brought within the applicable period of

---

[6] In support of the statement that writs of scire facias included the revival of judgments, the Tenth Circuit cited 12 Wright & Miller, Federal Practice and Procedure § 1134, note 2 and accompanying text.

[7] New Mexico law is not very clear about "dormant" and "revived" judgments. Other jurisdictions have statutes that spell out when judgments become "dormant" and what the judgment creditor must do to "revive" them. *See, e.g.,* Tex. Civ. Prac. & Remedies Code § 34.001 (No Execution on Dormant Judgment); Tex. Civ. Prac. & Remedies Code § 31.006 (Revival of Judgment); Kansas Statutes Annotated 60-2403 (Judgment; when dormant); Kansas Statutes Annotated 60-2404 (Revivor of dormant judgment). In New Mexico, the process must be inferred from the two statutes cited herein.

limitation within that jurisdiction, not to exceed fourteen years from the date of the judgment, and not afterward.

Next, N.M.S.A. § 39-1-20 provides:

An execution may issue at any time, on behalf of anyone interested in a judgment, within seven years after the rendition or revival of the judgment.

The New Mexico Court of Appeals construed these provisions in *Fischoff v. Tometich*, 113 N.M. 271 (Ct. App. 1991):

Clearly, Section 39–1–20 prohibits a judgment creditor from merely obtaining a writ of execution more than seven years after rendition of the judgment, *unless that judgment has been revived. See Crowell v. Kopp,* 26 N.M. 146, 189 P. 652 (1919). Nothing in *Crowell,* or Section 39–1–20, prohibits a judgment creditor from seeking execution following revival. A judgment creditor such as Plaintiff may therefore rely upon an action for revival of his judgment…we believe the 1983 legislature intended to allow the extended period of Section 37–1–2 to permit execution after revival of existing judgments.

113 N.M. at 274 (emphasis in original).[8]

It is not clear what valid objections there might be to a motion to revive a judgment, so long as the judgment is unpaid and the statute of limitations has not run. *See, e.g., In re Beery*, 2007 WL 1521140, at *1 (Bankr. D.N.M.) (revival is appropriate where judgment has not been paid and the 14-year statute of limitations has not run). Possible objections to revival could include that the movant does not own the judgment, *Landmark National II Corp. v. Green*, 2017 WL 4167413, at *1 (Ohio App.); that revival might violate the judgment debtor's due process or equal protection rights, *Gloor v. BancorpSouth Bank*, 216 So. 3d 444, 447 (Ala. App. 2016); or that the judgment was discharged in bankruptcy, *Mousel Law Firm, P.C. v. Townhouse, Inc.*, 259 Neb. 113, 117-18 (S. Ct. 2000).

---

[8] The New Mexico Court of Appeals refers to "an action for revival." The Court concludes that a motion for revival, such as the one brought by Plaintiff in this proceeding, is the type of "action" contemplated. An independent lawsuit is not required; it would be inefficient and expensive, without providing any additional due process protections. *See also* Rule 81(b) (writes of scire facias abolished; relief is to be sought by appropriate action or motion).

What is clear is that defenses to the original action cannot be asserted in a revival action. If the court had subject matter and personal jurisdiction when it entered the judgment, any defense that could have been raised in the original action cannot be asserted in a revivor proceeding. *Mansfield Truck Sales & Serv., Inc. v. Fortney*, 2009 WL 1610847, at *1 (Ohio App.). *See also Beery*, 2007 WL 1521140, at *1 (overruling arguments against revival that had been made and rejected before the original judgment was entered).

      3.      <u>Plaintiff's Revival Motion Should be Granted</u>. The Revival Motion was filed in the proper court, was timely, and was brought using the proper procedure. The Judgment has not been satisfied. It was entered less than 14 years ago. Defendants' objections to the Revival Motion lack merit, as discussed below. Thus, the Revival Motion is well taken and should be granted.

B.      <u>The Motion for Relief.</u>

Defendants argue that they should be relieved from the Judgment pursuant to Rule 60(b)(5), which provides:

> On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons: … (5) the judgment has been satisfied, released or discharge; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable.

Defendants give two reasons why they think it would inequitable to allow prospective enforcement of the Judgment. First, they argue:

> It is inappropriate and inequitable to enforce an *in rem* judgment when the subject property of the judgment has already been disposed of and the movant seeks to revive such judgment for purpose of pursuing collection against the Defendants.

Motion for Relief, p. 7. Second, they assert:

> Aside from the *in rem* nature of the State Court Judgment and Default Judgment, [Plaintiff's] failure to file a deficiency claim following the foreclosure sale in accordance with the Order Granting Stay Relief further supports the equity of declining to enforce the Default Judgment.

-8-

Motion for Relief, p. 10. The arguments will be addressed in turn.

    1.    <u>Is the Judgment Limited to Declaring the In Rem Judgment Nondischargeable</u>?

Defendants argue that the Judgement "is merely a finding that the [In Rem Judgment] is non-dischargeable, but it is not an independent finding of liability, separate from the State Court Judgment, against the Defendants." Motion for Relief, p. 7. They argue that the Judgment "merely made the [In Rem Judgment] nondischargeable (rather than establishing independent liability under" Plaintiff's promissory note. *Id.* at 9. The Court cannot agree with the premise of this argument. True, Plaintiff was careful to get an *in rem* judgment in the Foreclosure Action so as not to violate the automatic stay. That was an appropriate, cautious way to proceed. In contrast, however, the Judgment contains both an *in personam* money judgment of $76,165.38 against Defendants, and a declaration that the judgment debt is nondischargeable.[9]

Defendants acknowledged this fact when they signed the Stipulated Garnishment Judgment, which includes the following: "The Plaintiff/Judgment Creditor, Sandia Area Federal Credit Union, has a judgement dated March 16, 2009, *against the Defendant/Judgment Debtor, Charles A Fiorenza*." (emphasis added).[10]

Further, Defendants' argument about the nature of the Judgment makes no sense. By the time the Judgment was entered, the Foreclosure Action had been completed and Plaintiff's In Rem

---

[9] Defendants argue that Plaintiffs could not obtain an *in personam* judgment after entry of the In Rem Judgment on the same debt. That argument fails *See Kepler v. Slade*, 119 N.M. 802, 805 (S. Ct. 1995) ("the mortgagee may sue either on the note or foreclose on the mortgage, and may pursue all remedies at the same time or consequently . . . As long as there is no double recovery on the debt, the mortgagee may pursue either or both remedies."); *Romero v. Onewest Bank, FSB,* 2013 WL 5309570, at *2 (N.M. App.) (citing and quoting *Kepler*).

[10] For unknown reasons, the Stipulated Garnishment Judgment refers to the original default judgment (later set aside) rather than the Judgment. This probably was an oversight.

Judgment had been extinguished. It would have been pointless to declare the In Rem Judgment nondischargeable; it was already gone.

Finally, there is no benefit to declaring *in rem* judgments nondischargeable. If there is value in the property to pay an *in rem* judgment, it makes no difference whether the judgment is nondischargeable—it will get paid. On the other hand, if there is no equity to pay the *in rem* judgment (as in this case), the judgment would not be paid even if it were declared nondischargeable.

2. <u>Plaintiff Was Not Required to File a Proof of Claim</u>. Defendants' second argument is that Plaintiff's failure to file a proof of claim should bar prospective application of the Judgment. The Court overrules this weak argument. The Stay Relief Order required LaSalle to file a deficiency proof of claim, not Plaintiff. Plaintiff did not participate in the stay relief contested matter, did not agree to the Stay Relief Order, and is not mentioned in the order. Furthermore, it makes no sense to require Plaintiff to file a proof of claim. The chapter 7 trustee declared the case a "no asset" case, so bar date was ever needed or set. Filing a claim would have been a waste of time.

3. <u>Other Problems with the Motion for Relief</u>. The Relief Motion has other problems.

a. <u>The motion was not filed within a reasonable time</u>. While there is no time limit for seeking relief under Rule 60(b)(5), motions must be brought within a reasonable time. 11 Wright & Miller, Federal Practice and Procedure, § 2863, note 4 and accompanying text. Courts have found that motions filed 22-29 months after the fact to be unreasonable. *See, e.g., Morse-Starrett Product Co. v. Steccone*, 205 F.2d 244 (9th Cir. 1953) (motion brought after 22 months to modify an injunction was unreasonable); *Sunbeam Corp v. Charles Appliances, Inc,* 119 F. Supp. 492 (S.D.N.Y. 1953) (delay of 29 months between event making previous injunction inequitable

and the motion was unreasonable). Here, Defendants' arguments relate to events that occurred before the Judgment was entered (i.e. extinguishment of the In Rem Judgment and failure to file a proof of claim). The time to attack the Judgment on these grounds was in 2009, not 2018. The Motion for Relief was not brought within a reasonable time.

        b.    <u>No prospective application</u>. In addition, Defendants' argument that it would be inequitable to apply the Judgment prospectively must be overruled because money judgments do not have prospective effect. The court in *Kalamazoo River Study Group v. Rockwell Intern. Corp* outlined the meaning of "prospective:"

> The mere possibility that a judgment has some future effect does not mean that it is "prospective" because "[v]irtually every court order causes at least some reverberations into the future, and has ... some prospective effect." The essential inquiry into the prospective nature of a judgment revolves around "whether it is 'executory' or involves the 'supervision of changing conduct or conditions.'" Injunctions (permanent or temporary), some declaratory judgments, and particularly consent decrees are prospective judgments susceptible to a Rule 60(b)(5) challenge. Money judgments, however, do not generally have prospective application because they are final in the sense of involving a set monetary outlay.

355 F.3d 574, 587 (6th Cir. 2004) (citations omitted). *See also Ryan v. U.S. Lines Co.*, 303 F.2d 430, 434 (2d Cir. 1962) (Rule 60(b)(5) applies only to judgments with prospective effect, and so does not cover the case of a judgment for money damages); *Marshall v. Board of Ed., Bergenfield, N.J.*, 575 F.2d 417 (3d Cir. 1978) (citing *Ryan*); *Stokors S.A. v. Morrision*, 147 F.3d 759 (8th Cir. 1998) (citing *Ryan* and *Marshall*). Because the Judgment is a money judgment, it lacks prospective application and is not susceptible to Rule 60(b)(5) relief.

        c.    <u>No significant change in law or fact</u>. Third, Defendants do not cite to any significant changes in fact or law after the Judgment was entered that would entitle them to equitable relief under Rule 65(b)(5). Instead, Defendants rely on events that occurred *before* the

Judgment was entered. Such arguments more closely resemble an appeal than proper grounds for Rule 60(b)(5) relief. *See* 11 Wright & Miller, Fed. Prac. & Proc. Civ. § 2863:

> The fact that the rule allows relief if it is "no longer equitable" for the judgment to have prospective application is not a substitute for an appeal. It does not allow relitigation of issues that have been resolved by the judgment. Instead it refers to some change in conditions that makes continued enforcement inequitable.

*See also Beery*, 2007 WL 1521140, at *1 (attacking the merits of the underlying claim must be done before entry of the judgment, not during revival). All of Defendants' arguments were or should have been made in 2009 and cannot properly be considered in a revival motion.

    d. <u>Jurisdiction/Abstention</u>. Finally, Defendants argue that the Court lacks jurisdiction to revive the Judgment, and/or that the Court should abstain from reviving it. The argument must be overruled. The Court clearly has jurisdiction to revive the Judgement; indeed, it is the only proper court to do so. *See, e.g, Burge v. Broussard,* 258 S.W. 502, 505 (Tex. Civ. App. 1924) (scire facias proceedings must be held in the same court rendering the judgment sought to be revived); *Hawthorne v. Guenther*, 461 S.W.3d 218 (Tex. Civ. App. 2015) (citing *Burge*); *see generally* 46 Am. Jur. 2d Judgments § 386, n. 6 and accompanying text ("Such a proceeding must be had in the same court rendering the judgment sought to be revived"). Similarly, "relief from a judgment on the ground that it no longer is equitable should come from the court that gave the judgment." 11 Wright & Miller, Federal Practice and Procedure, § 2863, note 2 and accompanying text. The Court has exclusive jurisdiction to hear the motions; it would be a dereliction of duty to abstain.

III.  CONCLUSION

Plaintiff is entitled to revive its Judgment. Defendants' arguments in opposition to revival and in the Motion for Relief are not well taken and must be overruled. Separate orders will be entered.

_____
Hon. David T. Thuma
United States Bankruptcy Judge

Entered: January 17, 2019

Copies to: counsel of record